RUSS, AUGUST & KABAT
Irene Y. Lee (SBN 213625)
  ilee@raklaw.com
Ashley R. Yeargan (SBN 259523)
  ayeargan@raklaw.com
Erica S. Kim (SBN 313261)
  ekim@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone:   (310) 826-7474
Facsimile:    (310) 826-6991

Attorneys for Defendant
K & SODA, LLC d/b/a 818 SPIRITS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA –WESTERN DIVISION

| | |
|---|---|
| CLIPBANDITS, LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br><br>K & SODA, LLC d/b/a 818 SPIRITS<br><br>                    Defendant. | Case No. 2:22-cv-01071-SVW-JEM<br><br>Assigned to The Honorable Stephen V. Wilson, Courtroom 10A<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Hearing**<br>Date:        October 31, 2022<br>Time:        1:30 p.m.<br>Judge:       Hon. Stephen V. Wilson<br>Courtroom: 10A<br><br>Action Filed:  February 16, 2022<br>Trial Date:     December 6, 2022 |

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................7

II.  UNCONTROVERTED AND INCONTROVERTIBLE FACTS ............8

    A.   Plaintiff's Tequila 512 ....................................8

    B.   Defendant's 818 Tequila ...................................9

III. LEGAL STANDARD ...........................................................11

IV.  THIS COURT SHOULD GRANT SUMMARY JUDGMENT ............11

    A.   Plaintiff's Word Mark Claim...................................13

        1.   "512" Is A Weak Mark ...................................13

        2.   "512" and "818" are Not Similar.......................16

        3.   Consumers Are Not Confused..........................17

        4.   Consumers Exercise a High Degree of Care In This Space .................................................19

        5.   Defendant Had No Intent to Capitalize on Plaintiff's 512 Word Mark or Purported Goodwill Therein ..............19

        6.   Proximity of the Goods, Marketing and Distribution Channels Used, and Likelihood of Expansion of Product Lines .........................................20

        7.   Balancing the Factors ..................................21

    B.   Plaintiff's Trade Dress Claim ................................23

        1.   512's Trade Dress Is Neither Inherently Distinctive Nor Has Secondary Meaning ..............................25

        2.   There Is No Likelihood of Confusion....................26

    C.   Plaintiff's Other Causes of Action............................30

V.   CONCLUSION ...................................................................31

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

Aliign Activation Wear, LLC v. lululemon athletica Canada Inc.
    2021 WL 3117239 (C.D. Cal. June 7, 2021) ......................................... passim

AMF Inc. v. Sleekcraft Boats
    599 F.2d 341 (9th Cir. 1979)......................................12, 16, 17, 20

Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.
    611 F.2d 296 (9th Cir. 1979)...........................................................24

Arcona, Inc. v. Farmacy Beauty, LLC
    976 F.3d 1074 (9th Cir. 2020)....................................................11, 24

Brookfield Commc'n Inc. v. W. Coast Ent. Corp.
    174 F.3d 1036 (9th Cir. 1999)......................................13, 16, 21

Brooklyn Brewery Corp. v. Black Ops Brewing, Inc.
    156 F. Supp. 3d 1173 (E.D. Cal. 2016) ..........................................12

Chesebrough-Pond's, Inc. v. Faberge, Inc.
    666 F.2d 393 (9th Cir. 1982)................................................... passim

Cleary v. News Corp.
    30 F.3d 1255 (9th Cir. 1994)...........................................................30

Credit One Corp. v. Credit One Fin., Inc.
    661 F. Supp. 2d 1134 (C.D. Cal. 2009)..........................................30

Disc Golf Ass'n., Inc. v. Champion Discs, Inc.
    158 F.3d 1002 (9th Cir. 1998).........................................................23

E & J Gallo v. Proximo Spirits, Inc.
    2012 WL 273076 (E.D. Cal. Jan. 30, 2012)........................... passim

E. & J. Gallo Winery v. Gallo Cattle Co.
    967 F.2d 1280 (9th Cir. 1992).................................................19, 21

Entrepreneur Media, Inc. v. Smith
    279 F.3d 1135 (9th Cir. 2002).................................................15, 16

Fiji Water Co., LLC v. Fiji Min. Water USA, LLC
    741 F. Supp. 2d 1165 (C.D. Cal. 2010).............................23, 25, 26

RUSS, AUGUST & KABAT

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

RUSS, AUGUST & KABAT

First Brands Corp. v. Fred Meyer, Inc.
    809 F.2d 1378, 1383 (9th Cir. 1987)........................................................26

Fleischer Studios, Inc. v. A.V.E.L.A., Inc.
    925 F. Supp. 2d 1067 (C.D. Cal. 2012)..................................................19

GoTo.com, Inc. v. Walt Disney Co.
    202 F.3d 1199 (9th Cir. 2000)..........................................................12, 13

Grey v. Campbell Soup Co.
    650 F. Supp. 1166 (C.D. Cal. 1986)......................................................30

Hansen Beverage Co. v. Nat'l Beverage Corp
    493 F.3d 1074 (9th Cir. 2007)....................................................16, 20, 27

Hero Nutritionals LLC v. Nutraceutical Corp.
    No. SACV 11-1195 AG MLGX, 2013 WL 4480674 (C.D. Cal. Aug. 16,
    2013) .................................................................................................21

HMH Pub. Co. v. Brincat
    504 F.2d 713 (9th Cir. 1974)................................................................24

In Re Medline Indus., Inc.
    No. 87680078, 2020 WL 1485709 (Mar. 25, 2020) ...............................29

Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.
    4 F.3d 819, 824 (9th Cir. 1993)............................................................26

JL Beverage Co., LLC v. Beam, Inc.
    899 F. Supp. 2d 991 (D. Nev. 2012) .....................................................17

Kalamazoo Cnty. Convention & Visitors Bureau, Inc. v. Sw. Michigan First Corp.
    No. 1:17-CV-303, 2017 WL 8640798 (W.D. Mich. Nov. 28, 2017)............14

Kendall-Jackson Winery, Ltd. V. E. & J. Gallo Winery
    150 F.3d 1042 (9th Cir. 1998)..............................................................25

Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.
    998 F. Supp. 2d 890 (C.D. Cal. 2014)...................................................31

Levi Strauss & Co. v. Blue Bell, Inc.
    778 F.2d 1352 (9th Cir. 1985)..............................................................26

Lipoplus, Inc. v. Kohan
    No. CV1810220PSGAGRX, 2019 WL 8231041 (C.D. Cal. Dec. 19, 2019)
    .........................................................................................................13

M2 Software, Inc. v. Madacy Entertainment
    421 F.3d 1073 (9th Cir. 2005)................................................................11, 12

Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha
    290 F. Supp. 2d 1083 (C.D. Cal. 2003)..........................................................16

Moroccanoil, Inc. v. Perfumes World Com, Inc.
    234 F. Supp. 3d 1026 (C.D. Cal. 2017)..........................................................31

Network Automation, Inc. v. Advanced Sys. Concepts, Inc.
    638 F.3d 1137 (9th Cir. 2011).......................................................................21

Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.
    269 F.3d 114 (2d Cir. 2001).....................................................................24, 27

One Indus., LLC v. Jim O'Neal Distrib., Inc.
    578 F.3d 1154 (9th Cir. 2009)............................................................... passim

Phillip Morris USA Inc. v. Shalabi
    352 F. Supp. 2d 1067 (C.D. Cal. 2004)..........................................................31

Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.
    354 F.3d 1020 (9th Cir. 2004).......................................................................21

Pom Wonderful LLC v. Hubbard
    775 F.3d 1118 (9th Cir. 2014).......................................................................13

Regal Jewelry Co. v. Kingsbridge Int'l, Inc.
    999 F. Supp. 477 (S.D.N.Y. 1998)...............................................................29

S & B Filters Inc. v. R2C Performance Prod., LLC
    2016 WL 8928314 (C.D. Cal. Aug. 18, 2016)...............................................17

Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC
    680 F. Supp. 2d 1107, 1118 (N.D. Cal. 2010) ........................................13, 14

Sazerac Co., Inc. v. Fetzer Vineyards, Inc.
    265 F. Supp. 3d 1013 (N.D. Cal. 2017) ...................................................15, 19

Seabrook Foods, Inc. v. Bar-Well Foods Ltd.
    568 F.2d 1342 (C.C.P.A. 1977) ....................................................................25

Star Indus., Inc. v. Bacardi & Co.
    412 F.3d 373 (2d Cir. 2005)..........................................................................19

RUSS, AUGUST & KABAT

1

2

3

4

5

6

7

8

9

10

11

Stone Brewing Co., LLC v. MillerCoors LLC
    445 F. Supp. 3d 1113 (S.D. Cal. 2020) ....................................................13, 16

Stonefire Grill, Inc. v. FGF Brands, Inc.
    987 F. Supp. 2d 1023 (C.D. Cal. 2013)....................................................11, 17

Surfvivor Media, Inc. v. Survivor Prods.
    406 F.3d 625 (9th Cir. 2005) ............................................................11, 18, 19

Two Pesos, Inc. v. Taco Cabana, Inc.
    505 U.S. 763 (1992) ................................................................................25

Unique Sports Prod., Inc. v. Ferrari Importing Co.
    2011 WL 5156798 (N.D. Ga. Oct. 27, 2011)................................................29

Vail Assocs., Inc. v. Vend-Tel-Co.
    516 F.3d 853 (10th Cir. 2008)........................................................14

**Statutes**

Cal. Bus. Professions Code Section 17200 ........................................................30

Fed. R. Civ. Proc. 56(a)................................................................................11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

RUSS, AUGUST & KABAT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff, which makes Tequila 512, brought this frivolous case to bring attention to its brand by suing Defendant, the producer of 818 Tequila, a fast-rising, celebrity-backed brand. With this case, Plaintiff seeks to stop Defendant from using Defendant's federally-registered "818" trademark on tequila products and ancillary merchandise on two grounds: (1) that "818" is confusingly similar to Plaintiff's "512" word mark, and (2) that the purported trade dress of Defendant's tequila bottles is confusingly similar to Plaintiff's trade dress.

However, there is no likelihood of confusion because the key *Sleekcraft* factors regarding the strength of Plaintiff's mark, the similarity of the marks, evidence of actual confusion, and Defendant's intent in selecting its mark all weigh strongly for Defendant. Plaintiff's word mark is weak – it is one of a crowd of marks created from numbers and area codes that have been applied to alcoholic beverages produced by a number of different companies. The numbers "512" and "818" are not similar. A consumer survey of 527 participants conducted by Defendant's expert confirms no likelihood of confusion, as it reveals that *zero* consumers are confused as to the source of Defendant's products, or whether Defendant's products are somehow related to Plaintiff or its products. There is also no evidence that Defendant had any intent to trade on any purported goodwill associated with Plaintiff's brand, or to deceive its customers into thinking that its products came from Plaintiff. Indeed, neither Zak Kyes, the designer of Defendant's tequila bottle labels, nor anybody working for Defendant, had ever even heard of Plaintiff or seen its Tequila 512 products until *after* Defendant's May 2021 product launch. The only factors that do not favor Defendant stem from the simple fact that both products are tequilas, something true of all tequila products. Those factors are inadequate, on their own, to survive summary judgment. See One Indus., LLC v. Jim O'Neal Distrib., Inc., 578 F.3d 1154, 1165 (9th Cir. 2009); see also E & J Gallo v. Proximo Spirits, Inc., No.

RUSS, AUGUST & KABAT

CV-F-10-411 LJO JLT, 2012 WL 273076, at *19 (E.D. Cal. Jan. 30, 2012), aff'd sub nom. E. & J. Gallo Winery v. Proximo Spirits, Inc., 583 F. App'x 632 (9th Cir. 2014) ("Proximo Spirits"). While not every trademark case is appropriate for summary judgment, this case is. No reasonable juror could be confused by these two marks as a matter of law. The critical *Sleekcraft* factors all weigh strongly in favor of Defendant.

There is also no genuine dispute of material fact with regard to Plaintiff's claims that Defendant's tequila bottles infringe Plaintiff's purported "trade dress." As in the Proximo Spirits case, 2012 WL 273076, at *7, Plaintiff has had difficulty defining its trade dress since it filed this case. Plaintiff cannot, as a matter of law, establish that its trade dress is inherently distinctive or has acquired secondary meaning. Even if it could, or if the Court determines that there is a factual issue with regard to that element of Plaintiff's claim, Defendant should still be granted summary judgment because no reasonable juror could find a likelihood of confusion as to the source or affiliation of Plaintiff's or Defendant's tequila products. Accordingly, Defendant respectfully requests that this Court grant summary judgment as to the entirety of Plaintiff's Complaint. In the alternative, the Court should grant partial summary judgment on Plaintiff's claims for infringement of its word mark "512."

## II.   UNCONTROVERTED AND INCONTROVERTIBLE FACTS

### A.   Plaintiff's Tequila 512

Plaintiff is the registered owner of the standard character word mark "512," Registration No. 4280076, for the following goods in International Class 33: "Tequila; Distilled Spirits; Spirits" (the "512 Word Mark"). Defendant's Statement of Unconverted Facts ("UF") 1. Plaintiff applied for registration of the following "TEQUILA 512 & Design" mark in Class 33, Serial No. 90810263: 

UF 2. The application was refused and issued a Final Office Action in April

RUSS, AUGUST & KABAT

2022.[1] UF 3.

Plaintiff sells three flavors of tequila using the 512 Word Mark – blanco, reposado, and añejo. UF 5. These bottles have been lodged with the Court as Exhibits A-C to Defendant's Notice of Lodging ("NOL") filed concurrently herewith.

Plaintiff alleges that it has sold "a popular tequila in the United States under the brand name 512, using a highly distinctive logo and color scheme that has been in place since 2015." UF 7. Plaintiff describes its trade dress as "distinctive black lettering inside a vertical yellow rectangle." UF 8. Plaintiff has further described its trade dress as the 512 Word Mark plus "all distinctive combinations of one or more of the following elements: vertical yellow rectangle, black square outline, 512 in black within the yellow rectangle, Tequila in black within the yellow rectangle (this last item only as part of the design as a whole)." UF 9. Plaintiff asserts that its trade dress is both inherently distinctive and has secondary meaning. UF 10.

Plaintiff's tequila is sold through its own website (www.tequila512.com) and in places where alcohol is sold. UF 11. Plaintiff's blanco retails on its website for $32.99, the reposado for $38.99, and the añejo for $45.99. UF 12.

## B.   Defendant's 818 Tequila

Defendant is the registered owner of the standard character word mark "818," Registration No. 6464224, for "Distilled Spirits" in International Class 33 (the "818 Word Mark"). UF 13. Defendant was co-founded by Kendall Jenner, who first announced the launch of 818 Tequila products on February 16, 2021. UF 14. Defendant started selling 818 Tequila Blanco, Añejo, and Reposado to the public on May 17, 2021. UF 15. These bottles have been lodged with the Court as Exhibits D-F to Defendant's Notice of Lodging filed concurrently herewith.

818 Tequila is currently available for purchase in 49 states and more than

---

[1] The basis of the refusal was that the inclusion of the word "TEQUILA" would cause a likelihood of confusion with the certification mark "TEQUILA," Registration No. 5225126, owned by Consejo Regulador del Tequila, A.C. in Jalisco, Mexico. UF 4.

RUSS, AUGUST & KABAT

4,000 cities in the United States, as well as Canada, the Bahamas, Turks and Caicos, Curacao, Jamaica, Bermuda, Trinidad & Tobago, and Suriname, and will soon be available for sale in China, the UK, the EU, and the UAE. UF 18. It is sold through Defendant's own website (https://drink818.com), third party vendors, by 50 major national grocery store chains and/or alcohol retail chains (e.g., Total Wine, BevMo, Kroger, Walmart, Target, Albertsons, and more), and is available in over 7,000 bars and restaurants throughout the country. UF 19.

Plaintiff asserts that Defendant "charges substantially more" for its tequila than Plaintiff. UF 21. Indeed, on its website, Defendant's blanco retails for $45, the reposado for $59, and the añejo for $69. UF 20.

Before adopting its 818 brand, Defendant considered a variety of potential names. UF 22. It ultimately chose the trademark "818" for its brand because Jenner grew up in Southern California's 818 telephone area code. UF 23. Prior to applying to register "818" as a trademark, Defendant's counsel conducted multiple trademark searches for that term. UF 24. None of the searches revealed Plaintiff's 512 Word Mark or anything at all regarding its brand. UF 25. When Defendant launched 818 Tequila, nobody associated with it had ever even heard of Tequila 512, or seen its packaging. UF 26-27.

For its labels, Defendant engaged the Zak Group, a United Kingdom-based design firm. UF 28. Designer Zak Kyes looked to Mexican art history for inspiration. UF 29. Kyes presented for Defendant's review and consideration images of Mexican architect Luis Barragán's Torres de Satélite sculpture in the outskirts of Mexico City, as well as contemporary art by Gabriel Kuri, who is known for use of receipts, tickets, and other artifacts of consumer goods in sculptures and collages. UF 30.

Working from the color palate and aesthetic inspired by Barragán and Kuri, Kyes proposed, and Defendant selected, a color scheme for 818's labels based on fresh, natural-tone colors that could blend in seamlessly and be esthetically pleasing in anyone's home, regardless of its décor. UF 31. The label's design and text was

intentionally designed to look simple and minimal yet, at the same time, stand out due to the unique font style and size of the brand name compared to the rest of the text. UF 32.

## III.   **LEGAL STANDARD**

Summary judgment is proper where the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a); Aliign Activation Wear, LLC v. lululemon athletica Canada Inc., No. 2:20-cv-03339-SVW-JEM, 2021 WL 3117239, at *1 (C.D. Cal. June 7, 2021), aff'd., No. 21-55775, 2022 WL 3210698 (9th Cir. Aug. 9, 2022). Courts in this circuit have granted summary judgment in trademark cases where no reasonable juror could find a likelihood of confusion, such that there is no genuine issue of material fact for trial. See, e.g., Aliign, 2021 WL 3117239, at *2; Arcona, Inc. v. Farmacy Beauty, LLC, 976 F.3d 1074, 1081 (9th Cir. 2020); One Indus., 578 F.3d at 1165; Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005); M2 Software, Inc. v. Madacy Entertainment, 421 F.3d 1073, 1080-85 (9th Cir. 2005); Stonefire Grill, Inc. v. FGF Brands, Inc., 987 F. Supp. 2d 1023, 1057 (C.D. Cal. 2013); Proximo Spirits, 2012 WL 273076, at *19.

## IV.   **THIS COURT SHOULD GRANT SUMMARY JUDGMENT**

Plaintiff has asserted five (5) causes of action against Defendant: (1) federal trademark infringement (Section 32(1) of Lanham Act, 15 U.S.C. Section 1114(1)), (2) federal unfair competition and false designation of origin (Section 43(a) of Lanham Act, 15 U.S.C. Section 1125(a)), (3) state common law trademark infringement, (4) California statutory unfair competition, and (5) common law unfair competition. [DKT No. 1]. Plaintiff's first cause of action is based solely on the word marks "818" and "512." Id. The remaining causes of action are based upon Defendant's alleged infringement of the 512 Word Mark, and Plaintiff's unregistered design mark and alleged trade dress. Id.

Each cause of action requires Plaintiff to prove that Defendant's use of "818"

RUSS, AUGUST & KABAT

and/or the design of its tequila bottles is likely to cause consumer confusion. In general, the test for "likelihood of confusion" is "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good bearing one of the marks." M2 Software, 421 F.3d at 1080. "Confusion on the part of a negligible number of consumers is insufficient for the trademark holder to prevail. Rather, a trademark holder must establish that 'an ***appreciable number*** of people' will be confused as to the source of the product." Aliign, 2021 WL 3117239, at *2 (emp. added). To satisfy its burden, "the plaintiff 'must show sufficient evidence to permit a trier of fact to find that confusion is ***probable, not merely possible***.'" Id. (emp. added).

Courts consider eight *Sleekcraft* factors to guide a likelihood of confusion analysis: (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) type of goods and the degree of care likely to be exercised by the purchaser, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of the product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979); M2 Software, 421 F.3d at 1080. The eight-factor analysis under Sleekcraft is a pliant one, in which "some factors are more important than others." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1204 (9th Cir. 2000); Brooklyn Brewery Corp. v. Black Ops Brewing, Inc., 156 F. Supp. 3d 1173, 1179 (E.D. Cal. 2016) ("The list of factors is not a scorecard—whether a party 'wins' a majority of the factors is not the point. Some factors are much more helpful than others, and the relative importance of each individual factor will be case specific."). A defendant need not show that all eight factors favor it in order to obtain summary judgment of noninfringement; certain factors, particularly relating to proximity of goods, are insufficient on their own to state a prima facie case for infringement. See One Indus., 578 F.3d at 1165; see also Proximo Spirits, 2012 WL 273076, at *19.

RUSS, AUGUST & KABAT

**A.**     **Plaintiff's Word Mark Claim**

To prevail on its first cause of action for trademark infringement, Plaintiff must establish that (1) it has a protected ownership interest in the 512 Word Mark, and (2) Defendant's use of the 818 Word Mark in its 818 Tequila is likely to cause consumer confusion. Brookfield Comm'n Inc. v. W. Coast Ent. Corp., 174 F.3d 1036, 1046-47 (9th Cir. 1999); GoTo.com, 202 F.3d at 1204 n.3. For the purposes of this motion, Defendant does not contest Plaintiff's ownership interest in the 512 Word Mark. Thus, the only question is whether or not Defendant's use of the 818 Word Mark is likely to cause consumer confusion. Summary judgment is appropriate because no reasonable juror could possibly conclude that "818" is confusingly similar to "512." See, e.g., Aliign, 2021 WL 3117239, *16; Chesebrough-Pond's, Inc. v. Faberge, Inc., 666 F.2d 393 (9th Cir. 1982) (affirming summary judgment where "trademark 'Match' was so not similar to a competitor's trademark 'Macho' that its use constituted infringement).

**1.**     **"512" Is A Weak Mark**

A mark's strength is evaluated based on: (1) the mark's inherent distinctiveness (i.e., its "conceptual strength") and (2) the mark's recognition in the market (i.e., its "commercial strength"). Stone Brewing Co., LLC v. MillerCoors LLC, 445 F. Supp. 3d 1113, 1129 (S.D. Cal. 2020). The scope of a mark's trademark protection depends on its strength. Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1126 (9th Cir. 2014).

Geographically descriptive marks like the Austin area code "512" are conceptually weak and entitled to less protection. Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC, 680 F. Supp. 2d 1107, 1118 (N.D. Cal. 2010) (concluding that "Sand Hill Advisors" was geographically descriptive and thereby a weak mark); Lipoplus, Inc. v. Kohan, No. CV1810220PSGAGRX, 2019 WL 8231041, at *5 (C.D. Cal. Dec. 19, 2019) (geographically descriptive mark entitled to "very limited protection"); see also Kalamazoo Cnty. Convention & Visitors Bureau, Inc. v. Sw.

13

1   Michigan First Corp., No. 1:17-CV-303, 2017 WL 8640798, at *5 (W.D. Mich. Nov.

2   28, 2017) (area code "269" found to be geographically descriptive mark). This is

3   because the Lanham Act tolerates a certain degree of confusion when a plaintiff

4   decides to identify its product with a single mark that is descriptive of a geographic

5   location. Vail Assocs., Inc. v. Vend-Tel-Co., 516 F.3d 853, 873 (10th Cir. 2008)

6   (noting "the undesirability of allowing anyone to obtain a complete monopoly on

7   use of a descriptive term simply by grabbing it first"). To that end, any purported

8   confusion caused solely by the fact that both parties use numbered marks based on

9   an area code is not enough to prevail on a claim for trademark infringement.

10          The widespread use of "512" by other Austin-based businesses further

11   weakens the strength of Plaintiff's mark. See Sand Hill Advisors, 680 F. Supp. 2d at

12   1118-19 ("the widespread use of 'Sand Hill' by other businesses further weakens the

13   'Sand Hill Advisors' mark."); see also One Indus., 578 F.3d at 1164 ("When similar

14   marks permeate the marketplace, the strength of the mark decreases."). Many

15   businesses headquartered in Austin, Texas and elsewhere within the "512"

16   geographic area code use "512" in their names.[2] UF 34. There are also numerous

17   other federally-registered word marks owned and used by third parties containing

18   "512," including "I'm So 512," "Chico 512," "Aqua 512," "AR Digital 512," and

19   "512 Abogada." UF 35. In Aliign, this court noted that "substantial evidence that

20   third parties use the mark. . . undermines the strength of [Plaintiff's] mark." Aliign,

21   2021 WL 3117239, *4 (citing Miss World (UK) Ltd. V. Mrs. Am. Pageants, Inc.,

22   856 F. 2d 1445, 1449 (9th Cir. 1988), for the proposition that "a mark which is

23   hemmed in on all sides by similar marks on similar goods or services cannot be very

24   distinctive. It is merely one in a crowd of marks. In such a crowd, customers will not

25   likely be confused between any two of the crowd and may have learned to carefully

26

27   [2] These include "Company 512," "512 Group, LLC," "512 Solar LLC," "512

28   Studios LLC," "512 Food Co.," "512 Seasoning Company LLC," "512 Research, LLC," "512 Ventures, LLC," "512 Renovations LLC," "512 Construction, LLC," "512 Espresso LLC," "512 Water Sports LLC," and "512 Wines, LLC." UF 34.

RUSS, AUGUST & KABAT

pick out one from the other."); see also Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1144 (9th Cir. 2002). Unlike the businesses identified above, Plaintiff and Defendant use different area codes as their marks.

Plaintiff cannot credibly claim to own the exclusive right to the concept of using numbers and/or a telephone area code as a mark or name for a beverage, or any other products or services for that matter. There are numerous alcoholic beverage companies that use numbers in their names. UF 37. Examples of tequila brands using numbers in their names include the following: 1800 Tequila, 3 Amigos Tequila, Cazul 100 Tequila, Avion Reserva 44 Tequila, Lobos 1707 Tequila, Codigo 1530 Tequila, 7 Leguas Tequila, 1921 Añejo Tequila, Corralejo 1821 Tequila, ArteNOM Selección 1414 Reposado, Calle 23 Tequila, and Gonzalez 1939 Tequila. UF 38.

Likewise, there are many alcoholic beverages bearing area codes as their trademarked brand names. UF 39. Indeed, ***Plaintiff is not the only party that uses "512" for an alcoholic beverage***. Austin's 512 Brewing Company makes a variety of beers under the trademark "512" based on Austin's 512 area code. UF 36. In the tequila market, Justin Timberlake's Sauza 901 Tequila was named after the area code for his hometown of Memphis, Tennessee. UF 40. Outside the tequila space, examples of alcoholic beverages named by area code include 303 Lager (made by Station 26 Brewing Co. in Denver, Colorado, where the area code is 303), 808 Pale Ale (made by the Waikiki Brewing Co. in Hawaii, where the area code is 808), 805 beer (made in California, where 805 is an area code), and 617 Lager (made by Lord Hobo Brewing in Massachusetts, where the Boston area code is 617). UF 41.

Plaintiff has not submitted any evidence in this case to meet its burden to establish that its 512 Word Mark is commercially strong. Sazerac Co., Inc. v. Fetzer Vineyards, Inc., 265 F. Supp. 3d 1013, 1036 (N.D. Cal. 2017), aff'd, 786 F. App'x 662 (9th Cir. 2019) (finding no commercial strength where plaintiff offered little evidence that its marks have actual marketplace recognition). Moreover,

RUSS, AUGUST & KABAT

Defendant's evidence that neither it nor its designer had heard of Plaintiff or its tequila via trademark searches and market research (UF 25-27) suggests that Plaintiff's 512 Word Mark lacks market recognition and is commercially weak. In addition, marks may be classified as commercially weak where there has been extensive third-party use of similar marks on similar goods. <u>Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha</u>, 290 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003) (mark "commercially weak and diluted" because it was in a "crowded field" of similar marks). Here, Plaintiff's lack of exclusive use of "512" further underscores the commercial weakness of its mark. Accordingly, the Court can reasonably conclude that this overall *Sleekcraft* factor cuts in favor of Defendant.

## 2.   <u>"512" and "818" are Not Similar</u>

The similarity of the marks "has always been considered a critical question in the likelihood-of-confusion analysis." <u>Stone Brewing</u>, 445 F. Supp. 3d at 1132; <u>Sleekcraft</u>, 599 F.2d at 351. Three principles guide a court in determining whether marks are similar. <u>Entrepreneur Media</u>, 279 F.3d at 1144. First, similarity is best adjudged by appearance, sound, and meaning. <u>Id.</u> Second, the marks must be considered in their entirety and as they appear in the marketplace. <u>Id.</u> Third, similarities are weighed more heavily than differences. <u>Id.</u> However, "[i]n the Ninth Circuit, significant dissimilarity of the marks alone can be sufficient to establish a lack of likelihood of confusion." <u>Proximo Spirits</u>, 2012 WL 273076, at * 15 (granting summary judgment where very significant dissimilarities weighed heavily against finding likelihood of confusion); <u>see also</u> <u>Brookfield</u>, 174 F.3d at 1054 ("Where the two marks are entirely dissimilar, there is no likelihood of confusion."); <u>see also</u> <u>Hansen Beverage Co. v. Nat'l Beverage Corp</u>, 493 F.3d 1074, 1080-81 (9th Cir.), <u>vacated as moot</u>, 499 F.3d 923 (9th Cir. 2007) (finding dissimilarity alone established no likelihood of confusion); <u>see also</u> <u>One Indus.</u>, 578 F.3d at 1165 ("We agree with the district court that because these marks are 'dramatically different,' there is no likelihood of confusion.").

RUSS, AUGUST & KABAT

Plaintiff's asserted mark is "512" and Defendant's accused mark is "818." 818 and 512 are not visually similar. See, e.g., One Indus., 578 F.3d at 1162 (noting that sight is significantly more important when confusion would occur via browsing in a store or online). 818 is visually symmetrical and the numerical symbol "8" does not look like a "5" or a "2." The fact that both marks have a "1" in the middle does not render them confusingly similar, particularly when the font of that "1" is as different as it appears here and is flanked by different numbers that make the marks distinctive. See Stonefire Grill, 987 F. Supp. 2d at 1052 ("presence of a common word does not render two marks similar where additional words make the marks distinctive."). In addition, when the marks are compared in their entirety, as they would appear in the marketplace, they are even more visually dissimilar. As described in further detail below, the presentation of the 512 and 818 marks differs significantly in terms of placement, prominence, font, and size. See S & B Filters Inc. v. R2C Performance Prod., LLC, No. EDCV161069JFWMRWX, 2016 WL 8928314, at *9 (C.D. Cal. Aug. 18, 2016) ("The difference in fonts, placement on the product, and the size make them visually dissimilar and, thus, the likelihood of confusion is extremely low."). In addition to appearing visually different, the two marks sound different – a consumer in the marketplace might describe what he or she is buying (or ask a store clerk where to find) by reading the brands phonetically: "Eight-One-Eight" versus "Five-One-Two." JL Beverage Co., LLC v. Beam, Inc., 899 F. Supp. 2d 991, 1002 (D. Nev. 2012) ("'Sound' is also relevant, because purchasers could potentially ask for a type of vodka by name at a store, bar, or restaurant."); see also, e.g., Chesebrough-Pond's, 666 F.2d at 397 (finding "Match" and "Macho" do not sound the same). For the foregoing reasons, this critical *Sleekcraft* factor weighs strongly in Defendant's favor.

### 3.   Consumers Are Not Confused

Plaintiff "must show that 'an appreciable number of people' will be confused as to the source of its product." Aliign, 2021 WL 3117239, at *2 (citing M2

RUSS, AUGUST & KABAT

_Software_, 421 F.3d at 1085). Not only can Plaintiff not meet this burden, but Defendant has conducted and submitted a consumer survey demonstrating that zero consumers are confused. Many courts in this district have granted summary judgment where, as here, a defendant presents evidence of no consumer confusion. _Surfvivor_, 406 F.3d at 635; _Chesebrough-Pond's_, 666 F.2d at 399.

Defendant engaged Dr. Michael Kamins, PhD, to design and conduct a consumer confusion study in this matter. Dr. Kamins designed and had an Eveready study conducted with a control and found zero forward confusion. Declaration of Irene Y. Lee in Support of Defendant's Motion for Summary Judgment or, In the Alternative, Partial Summary Judgment ("Lee Decl.") ¶ 2, Exhibit A (Report of Dr. Michael A. Kamins).

In a forward confusion study, participants are presented with an image of the junior user's mark (here, 818 Tequila's Blanco bottle) and asked a series of questions about it. _Id._, Ex. A ¶¶ 72-77. ***Out of 137 respondents, not a single person presented with Defendant's 818 Tequila bottle said that he or she thought it was put out by Plaintiff or 512***. _Id._, Table 1, ¶¶ 74-76. Not a single respondent identified 512 as another brand that comes from the same company that makes 818 Tequila. _Id._, Table 2, ¶¶ 77-78. Not a single respondent identified 512 as a brand associated with, sponsored by, or affiliated with 818 Tequila. _Id._, Table 3, ¶¶ 79-80.

Though Plaintiff has not expressly pled reverse confusion, it has alluded to the concept in some of its discovery responses. Accordingly, Defendant asked Dr. Kamins to also run a reverse confusion study. _Id._ ¶¶ 2, 82. In a reverse confusion study, participants are shown an image of the senior user's mark (here, 512 Tequila) and asked the same series of questions – who puts out the product, what other brands come from the same company, and what other brands are associated with, sponsored by, or affiliated with 512 Tequila. _Id._ ¶¶ 82, 85-91. Across these measures, the confusion rate was 1/133 or 0.75% for the "test cell" and 1/129 or 0.77% for the

RUSS, AUGUST & KABAT

"control cell."[3] Id. ¶ 92. Subtracting the control from the test cell yields a confusion rate that is not significantly different from zero. Id. Accordingly, Dr. Kamins's study demonstrated that there is no forward or reverse confusion in this case. This too is a factor that weighs heavily for summary judgment.

### 4. Consumers Exercise a High Degree of Care In This Space

In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a "reasonably prudent consumer" would take the time to distinguish between the two product lines. Surfvivor, 406 F.3d at 634. When goods are expensive, courts assume that the "reasonably prudent consumer" will exercise greater care in their purchases. E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1293 (9th Cir. 1992). "Purchasers of premium alcoholic beverages tend to exercise a high degree of sophistication and care when making their purchasing decisions." Sazerac, 265 F. Supp. 3d at 1037–38; Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 390 (2d Cir. 2005) ("Unhurried consumers in the relaxed environment of the liquor store, making decisions about $12 to $24 purchases, may be expected to exhibit sufficient sophistication to distinguish between Star's and Bacardi's products, which are differently labeled."). Here, the overall price points for the parties' respective products, and the fact that Defendant charges "substantially more" for its products (as asserted by Plaintiff), supports a high degree of care. This factor cuts in favor of Defendant.

### 5. Defendant Had No Intent to Capitalize on Plaintiff's 512 Word Mark or Purported Goodwill Therein

The next factor concerns whether the "defendant in adopting its mark intended to capitalize on [the] plaintiff's good will." Fleischer Studios, Inc. v. A.V.E.L.A., Inc., 925 F. Supp. 2d 1067, 1076 (C.D. Cal. 2012); see also Chesebrough-Pond's,

---

[3] 1/133 people thought 512 was made by Jenner, while 1/129 people in the control group thought the control bottle "758" was made by 818 Tequila. Lee Decl. ¶ 2, Exhibit A ¶¶ 87, 89.

RUSS, AUGUST & KABAT

666 F.2d at 399. No reasonable juror could find that this factor weighs in favor of Plaintiff. Neither Defendant nor its designer had heard of Plaintiff or its Tequila 512 when it selected "818" as its trademark or designed its bottles. UF 25-27; Aliign, 2021 WL 3117239, at *10 (first time defendant learned of the plaintiff's mark was after defendant had applied for its registration). Moreover, Defendant conducted multiple trademark searches that did not reveal Plaintiff's "512" trademark. UF 24-25; see Aliign, 2021 WL 3117239, at *10 ("lululemon conducted a trademark search in February 2015 before launching its 'Align' branded yoga apparel, and that search did not reveal Plaintiff's 'ALIIGN' mark."). Additionally, as in Aliign, Plaintiff's mark is neither conceptually nor commercially strong, such that "common sense" dictates that Plaintiff had little to no goodwill for Defendant to capitalize on. Aliign, 2021 WL 3117239, at *9. Accordingly, this factor also cuts in favor of Defendant.

6. **Proximity of the Goods, Marketing and Distribution Channels Used, and Likelihood of Expansion of Product Lines**

The goods in this case are both tequilas sold where liquor is sold. This simple fact, accompanied by nothing more, bears on three related *Sleekcraft* factors, "proximity of the goods," "marketing and distributions channels used," and "likelihood of expansion of product lines." Sleekcraft, 599 F.2d at 348-49. These are the only factors as to which there is arguably any question of whether they favor Defendant. But these factors, either alone or in combination, are inadequate to state a prima facie case for trademark infringement or survive summary judgment, since these factors are the same when dealing with *any* set of goods in the same sector (e.g. two vodkas, two tequilas, etc.). Hansen Beverage, 493 F.3d at 1079-80 (holding that although most of the *Sleekcraft* factors favored plaintiff, including goods being of the same type and in direct competition with each other, these findings "shed little light on the likelihood of confusion between *these particular products*" due to the dissimilarity of the marks, which "sp[oke] for itself."). This is only logical, since

20

these three factors would favor plaintiff as to every brand of tequila at the liquor store; a Plaintiff must offer far more than "these are both tequilas" to survive summary judgment, something Plaintiff has not and cannot do here. These factors are simply not important in the context of two goods in the same sector. See Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1150 (9th Cir. 2011) (proximity "become[s] less important if advertisements are clearly labeled or consumers exercise a high degree of care, because rather than being misled, the consumer would merely be confronted with choices among similar products.") (emp. added); see also E. & J. Gallo Winery, 967 F.2d at 1293 (stating it was not a "finding of major significance" where wine was sold and advertised in the same channels); see also Playboy Enterprises, Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020, 1028 (9th Cir. 2004) ([marketing channels] "factor merits little weight," as "given the broad use of the Internet today, the same could be said for countless companies."); see also Brookfield, 174 F.3d at 1060; (likelihood of expansion "relatively unimportant" where the parties are already selling similar products.) Hero Nutritionals LLC v. Nutraceutical Corp., No. SACV 11-1195 AG MLGX, 2013 WL 4480674, at *8 (C.D. Cal. Aug. 16, 2013) (likelihood of expansion "factor is neutral" where parties already compete).

### 7.    **Balancing the Factors**

As discussed above, all of the *Sleekcraft* factors other than those applying to goods in the same sector strongly favor Defendant. When the only *Sleekcraft* factors favoring a plaintiff are that the parties sell goods in the same sector, courts routinely grant summary judgment of noninfringement.

In One Industries v. O'Neal, the Ninth Circuit affirmed the lower court's granting of summary judgment with regard to a stylized "O" mark (            ):

> Although O'Neal and One Industries are direct
> competitors, we are persuaded that the marks do not look
> alike, that O'Neal has not produced evidence of actual
> confusion, and that no reasonable jury could infer that
> One Industries deliberately appropriated the goodwill

RUSS, AUGUST & KABAT

associated with the O' mark. The O' mark, though conceptually strong, is weakened by the presence of other, similar marks. In the absence of evidence of actual confusion or intent to deceive, we decline to grant O'Neal a virtual monopoly on the use of the letter "O" on motorcycle helmets. The mere fact that the two companies are direct competitors and happen to use the same letter on their products is not sufficient to show infringement. Accordingly, we conclude that there is no likelihood of confusion in this case, and that the district court properly granted summary judgment to One Industries.

One Indus., 578 F.3d at 1165;

Likewise, in E & J Gallo v. Proximo Spirits, the Court found no confusion between two competing tequilas; it noted that the competition-related factors favored the plaintiff, but granted summary judgment of noninfringement because the other factors favored the defendant. Proximo Spirits, 2012 WL 273076, *19; see also Chesebrough-Pond's, 666 F.2d at 399 ("In view of the dissimilarity of the words ['Match' and 'Macho'] the lack of intent to infringe, and the total absence of evidence of actual or potential confusion of the undressed marks, the district court correctly concluded that no likelihood of confusion existed"). As in One Indus. and Proximo Spirits, Plaintiff's and Defendant's marks are not similar; Plaintiff has not produced credible, admissible evidence of actual confusion; and there is no evidence of intent by Defendant to trade on Plaintiff's Tequila 512 brand or products. Moreover, Plaintiff's mark is weakened by a crowded field – there is a sea of number and area code marks associated with alcoholic beverages. As in One Indus. and Proximo Spirits, the only factor favoring the Plaintiff are that the products are in the field of alcoholic beverages; those factors, absent more, are not nearly enough to survive summary judgment as a matter of law. Accordingly, summary judgment is proper on Plaintiff's claim for infringement of its 512 Word Mark and all other claims to the extent they rely on the alleged infringement of Plaintiff's word mark.

RUSS, AUGUST & KABAT

## B.    Plaintiff's Trade Dress Claim[4]

In its discovery responses, Plaintiff clarified that its infringement claim for reposado and añejo is limited "to its use of the mark 818." UF 42. Thus, to the extent that this Court grants summary judgment on Plaintiff's word mark claim (Claim 1), it must also do so with respect to Plaintiff's Claims 2-5 in connection with 818 Tequila Reposado and 818 Tequila Añejo without further analysis. For the reasons set forth below, summary judgment is also proper on Plaintiff's Claims 2-5 as they relate to the trade dress of Defendant's 818 Tequila Blanco.

Plaintiff does not have a trade dress registration. UF 43. Plaintiff applied for registration of a logo that matches the description of its asserted trade dress, but that application was refused via a Final Office Action by the USPTO. UF 3. In discovery, Plaintiff described its trade dress as the 512 Word Mark plus "all distinctive combinations of one or more of the following elements: vertical yellow rectangle, black square outline, 512 in black within the yellow rectangle, Tequila in black within the yellow rectangle (this last item only as part of the design as a whole)." UF 9.

To succeed on a trade dress infringement claim under Section 43(a) the Lanham Act, Plaintiff must show: (1) that it owns a protectable trade dress that is not functional,[5] (2) that the trade dress is either inherently distinctive or has acquired distinctiveness through secondary meaning, and (3) that Defendant's trade dress creates a likelihood of confusion as to the source, affiliation, connection to or sponsorship of the product. Disc Golf Ass'n., Inc. v. Champion Discs, Inc., 158 F.3d 1002, 1005 (9th Cir. 1998); Fiji Water Co., LLC v. Fiji Min. Water USA, LLC, 741 F. Supp. 2d 1165, 1172 (C.D. Cal. 2010). When evaluating trade dress claims, courts

---

[4] Plaintiff's Complaint fails to expressly plead a claim for trade dress infringement, and its bare and fleeting attempts to define its trade dress has created a moving target. Nonetheless, it appears that Plaintiff's Claims 2-5 are based on both infringement of the 512 Word Mark and Plaintiff's alleged trade dress. [DKT 1].

[5] For the purposes of this Motion only, Defendant assumes and does not contest that Plaintiff's trade dress is not functional.

RUSS, AUGUST & KABAT

must not lose sight of the underlying purpose of the Lanham Act. The Lanham Act was passed to (1) to protect *consumers* from being *misled* as to the enterprise from which goods emanate; (2) to prevent an impairment of the value of the enterprise which owns the trademark; and (3) to achieve these ends in a manner consistent with the objectives of free competition. <u>HMH Pub. Co. v. Brincat</u>, 504 F.2d 713, 716 (9th Cir. 1974) ("The third objective dictates a degree of restraint in the pursuit of the first two…") (emp. added). "It is the source-denoting function which trademark laws protect, and nothing more. *The trademark is misused if it serves to limit competition in the manufacture and sales of a product*. That is the special province of the limited monopolies provided pursuant to the patent laws." <u>Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.</u>, 611 F.2d 296, 301 (9th Cir. 1979) (emp. added) (internal citations om.). To be clear, and as discussed below, Plaintiff claims certain elements as part of its trade dress that are either not present in Defendant's bottles at all, or are not something over which Plaintiff can claim a monopoly.

Numerous courts have granted summary judgment to dispose of trade dress claims in cases like this. <u>See</u> <u>One Indus.</u>, 578 F.3d at 1165-66 (affirming summary judgment because marks were plainly different in comparison, such that there was no likelihood of confusion); <u>see also</u> <u>Proximo Spirits</u>, 2012 WL 273076 at *19-20; <u>Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.</u>, 269 F.3d 114, 120 (2d Cir. 2001) (affirming summary judgment on trade dress claim where plaintiff failed to establish both that its bottle shape had acquired secondary meaning and a likelihood of confusion); <u>cf.</u> <u>Arcona</u>, 976 F.3d at 1080-81 (affirming summary judgment where no reasonable consumer would be confused by products differing in "packaging, size, color, shape, and all other attributes," even when products displayed the same term "EYE DEW").

RUSS, AUGUST & KABAT

1.      **512's Trade Dress Is Neither Inherently Distinctive
Nor Has Secondary Meaning**

To establish a trade dress claim, Plaintiff has the burden of proving that its dress is either (1) inherently distinctive, or (2) has acquired distinctiveness through secondary meaning. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992). To evaluate inherent distinctiveness, courts apply the *Seabrook* test, which considers: (1) whether the claimed trade dress is a common, basic shape or design; (2) whether it is unique or unusual in a particular field; and (3) whether it is a mere refinement of commonly adopted and well-known form of ornamentation for a particular class of goods which consumers view as mere ornamentation. Seabrook Foods, Inc. v. Bar-Well Foods Ltd., 568 F.2d 1342, 1344 (C.C.P.A. 1977). For packaging such as a bottle shape and label design to be inherently distinctive, it must be "so unique, unusual, or unexpected in this market that one can assume without proof that it will automatically be perceived by consumers as an indicator of origin." Fiji Water, 741 F. Supp. 2d at 1176 (internal quotations and citation om.); see also Kendall-Jackson Winery, Ltd. V. E. & J. Gallo Winery, 150 F.3d 1042, 1049 (9th Cir. 1998) (because the grape leaf is used widely in the wine industry, it lost the power to differentiate brands and is not inherently distinctive); see also Proximo Spirits, 2012 WL 273076, at *11 (trade dress is not inherently distinctive when a claimed trade dress includes features that are "incorporated commonly [by] a variety of tequila producers"). The court in Proximo Spirits found that the defendant successfully negated the inherent distinctiveness of plaintiff's tequila bottle by arguing there was "nothing unusual or unique about using silver and blue color schemes on Silver tequila or gold highlighting on Reposado tequila," and other features such as "the wooden top and agave leaf" were commonly used by other tequila producers. Id. at *11 (granting summary judgment in favor of defendant).

A product or product packaging trade dress acquires secondary meaning when a substantial segment of existing and potential consumers mentally associates the

RUSS, AUGUST & KABAT

dress with a single producer rather than with the product itself. <u>Levi Strauss & Co. v. Blue Bell, Inc.</u>, 778 F.2d 1352, 1354 (9th Cir. 1985); <u>Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.</u>, 4 F.3d 819, 824 (9th Cir. 1993) ("secondary meaning is learned association, an 'acquired distinctiveness.'").

In this case, Plaintiff cannot meet its burden to establish either that its asserted trade dress is inherently distinctive, or has acquired secondary meaning. As in <u>Proximo Spirits</u>, Plaintiff has had difficulty defining its trade dress since it filed this case. Moreover, Plaintiff does not consistently use what it has described in this case as its "trade dress." Indeed, Plaintiff markets and sells several products without the yellow color and/or without a "Tequila 512" in a yellow rectangle surrounded by a black box. UF 44. However, even when Plaintiff uses all the elements of its defined trade dress, there is nothing "inherently distinctive" about a black outline, a yellow rectangle, the shape of Plaintiff's bottles, their cork, or the sticker seal over their cork. Considering these features are incorporated commonly by other alcohol and tequila companies, Plaintiff cannot reasonably argue that its asserted dress is "so unique, unusual, or unexpected in this market" that one can assume, without proof, that it will automatically be perceived by consumers as an indicator of source. UF 45.; <u>Fiji Water</u>, 741 F. Supp. 2d at 1176. Nor has Plaintiff supplied any evidence in this case to support a finding that said elements have acquired secondary meaning. <u>See</u>, e.g., <u>First Brands Corp. v. Fred Meyer, Inc.</u>, 809 F.2d 1378, 1383 (9th Cir. 1987) (affirming ruling that Carbide's advertising budget failed to establish secondary meaning where the "advertising campaign has not stressed the color and shape of the antifreeze jug so as to support an inference of secondary meaning" because, for example "Carbide did not attempt to engender consumer identification with the yellow, F-style jug. It did not, for example, urge consumers to look for the 'familiar yellow jug.'").

## 2.   **There Is No Likelihood of Confusion**

Even if Plaintiff can establish that its asserted trade dress is inherently

distinctive or has secondary meaning, Defendant is still entitled to summary judgment because no reasonable juror could find a likelihood of confusion. One Indus., 578 F.3d at 1166 ("Although O'Neal's trade dress is nonfunctional and has arguably acquired secondary meaning, we have already concluded that no reasonable factfinder could find a likelihood of confusion between the O'NEAL mark and the One Icon. Accordingly, the district court properly granted summary judgment to One Industries"); see also Proximo Spirits, 2012 WL 273076, at *19-20; see also Nora Beverages, 269 F.3d at 120.

"When considering the similarity of the trade dresses, the Court focuses on the *overall impression* that is created by each, rather than comparing specific individual features." Proximo Spirits, 2012 WL 273076, at * 15 (emp. in original).

In the Ninth Circuit, significant dissimilarity of the marks alone can be sufficient to establish a lack of confusion. See Hansen Beverage, 493 F.3d at 1080; Proximo Spirits, 2012 WL 273076, at *19. In the context of summary judgment, Proximo Spirits is particularly instructive, as the court compared the parties' two tequila bottles to find that common features present in both bottles could not defeat summary judgment when numerous other competitors in the crowded market used those same features, and when the bottles were different in size, shape, dimension, and overall appearance. Proximo Spirits, 2012 WL 273076, at *16. The court in Proximo Spirits carefully noted each of the different design elements of the parties' respective tequila bottles. Id. at *15. Because of the numerous differences, the court found no likelihood of consumer confusion as a matter of law and granted summary judgment. Id. at *19-20.

Here, as in Proximo Spirits, Plaintiff's and Defendant's overall tequila bottle designs are very different:

- The "black square outline" that Plaintiff claims as part of its trade dress does not appear anywhere on Defendant's products;

- "818" is followed by "Tequila Blanco" in a smaller font, such that the

RUSS, AUGUST & KABAT

dominant marks being compared are "818" and the black-boxed "Tequila 512," which are not visually similar at all;

- Plaintiff's "512" is off-set with dashes, while there are no dashes around "818," which takes up the entire width of the label;

- the 512 bottle is tall and narrow, while the 818 bottle is shorter and more rounded;

- the neck of the 512 bottle is longer than the neck of the 818 bottle;

- the 512 bottle prints the text of its labels directly on the glass, whereas the 818 bottles affix a paper label to the front and back of the glass;

- because the 512 bottle's text is printed directly on the glass, the text printed on the back of the bottle is visible from the front and appears magnified, which is not the case with the 818 bottle;

- the texture of the 818 bottle feels different from that of the 512 bottle because the text on the 818 bottle is embossed into the label paper using a smooth stamp, such that the "818" numbers feel smooth to the touch compared to the rest of the paper label, while the entire 512 bottle is the same texture because of the printed text on glass;

- The 512 design also has three horizontal lines in the middle of the bottle followed by a picture of a volcano, while the 818 label has no horizontal lines or drawings of any kind;

- The bottles also use very different fonts, which is particularly evident when comparing Plaintiff's roman numeral "1" to the "1" in the "818";

- The very top of the bottles are different – the 512 bottle has a black top, while the 818 bottle has wood cork; and

- The sticker sealing the bottles (a common feature of tequila products) also appears different – the 512 bottle has a black sticker over its cork, while the 818 bottle uses a colored sticker over its cork.

<u>Compare</u> NOL, Exhibits A-C with NOL, Exhibits D-F.

RUSS, AUGUST & KABAT

Contrary to what is pled in the Complaint, the bright, attention-grabbing yellow printed on Plaintiff's bottles is also distinct and dissimilar from the neutral, muted colors affixed on 818's bottle labels. See, e.g., In Re Medline Indus., Inc., No. 87680078, 2020 WL 1485709, at *1, *16 (Mar. 25, 2020) (finding applicant's "subdued, pale" green in Pantone 2274C on the outer periphery of the green color family was distinct and dissimilar from registrant's "bright, attention-grabbing" green in Pantone 7488U which was squarely within the green family, and therefore strongly supported no likelihood of confusion); see also Unique Sports Prod., Inc. v. Ferrari Importing Co., No. 1:09-CV-660-TWT, 2011 WL 5156798, at *3 (N.D. Ga. Oct. 27, 2011), aff'd in part, vacated in part on other grounds, 720 F.3d 1307 (11th Cir. 2013) ("Although both products are generally light blue, the shades are very distinguishable. […] Thus, the dissimilarity of the marks weighs against finding a likelihood of confusion."); see also Regal Jewelry Co. v. Kingsbridge Int'l, Inc., 999 F. Supp. 477, 491 (S.D.N.Y. 1998) ("Regal's gray was not copied and Regal cannot prevent the use of every shade of gray by other manufacturers.").

Here, side-by-side demonstratives depicting the labels for each party's three different products are attached as Exhibit 11 to the Declaration of Ashley R. Yeargan in Support of Defendant's Motion for Summary Judgment or, In the Alternative, Summary Adjudication. None of Defendant's colors are similar, let alone confusingly similar to Plaintiff's. Defendant's colors are understated, muted, neutral colors, while Plaintiff's color is a loud, brash, highly-saturated yellow that starkly conflicts with the overall aesthetic achieved by Defendant's color scheme and label design. In light of these numerous, significant dissimilarities, no reasonable jury could find a likelihood of confusion as to the source of Defendant's tequila.

In addition to the fact that Plaintiff's and Defendant's trade dress is not similar, and as established above with respect to Plaintiff's word mark claim, consumers exercise a high degree of care in this space, and there is no evidence that Defendant intended to copy or deceive consumers into thinking that its products

RUSS, AUGUST & KABAT

were made, sponsored by, or affiliated with Plaintiff. Moreover, as in <u>Proximo Spirits</u>, Dr. Kamins's study addressed the parties' trade dress and found zero evidence of consumer confusion. <u>See</u> <u>Proximo Spirits</u>, 2012 WL 273076, at *5, *17 (citing to an Eveready study by Dr. Ford, noting that the "lack of evidence of actual confusion is significant, particularly when the key question to be resolved is whether there is a likelihood of confusion," and holding that "Dr. Ford's survey results and conclusion are highly probative of likelihood of confusion or lack thereof."). Accordingly, summary judgment is proper on Plaintiff's Second Cause of Action for federal unfair competition and false designation of origin under Section 43(a) of the Lanham Act and for all other causes of action that rely upon infringement of Plaintiff's asserted trade dress.

## C.   <u>Plaintiff's Other Causes of Action</u>

Because no reasonable juror could find a likelihood of confusion based upon either Plaintiff's 512 Word Mark or asserted trade dress, summary judgment should be granted as to Plaintiff's remaining causes of action for common law trademark infringement, unfair business practices under California Law (Cal. Bus. Professions Code Section 17200), and state common law unfair competition, each of which also require Plaintiff to establish a likelihood of confusion. <u>Credit One Corp. v. Credit One Fin., Inc.</u>, 661 F. Supp. 2d 1134, 1137-40 (C.D. Cal. 2009) ("In order to prevail on a [...] common law trademark infringement claim, a plaintiff must show that it owns a valid mark, that the mark was used without its consent, and that such unauthorized use is likely to cause confusion, mistake, or deception.*"); <u>Grey v. Campbell Soup Co.</u>, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986), <u>aff'd</u>, 830 F.2d 197 (9th Cir. 1987) ("The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same: whether confusion is likely."); <u>see also</u> <u>Cleary v. News Corp.</u>, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently

RUSS, AUGUST & KABAT

held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); see also Moroccanoil, Inc. v. Perfumes World Com, Inc., 234 F. Supp. 3d 1026, 1033 (C.D. Cal. 2017) (outcome of motion for summary judgment on Lanham Act claims dictates the outcome for a corresponding claim under § 17200); see also Phillip Morris USA Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1072-73 (C.D. Cal. 2004) (same); Kythera Biopharmaceuticals, Inc. v. Lithera, Inc., 998 F. Supp. 2d 890, 897-98 (C.D. Cal. 2014).

## V.   **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant its Motion for Summary Judgment on all of Plaintiff's causes of action or, in the alternative, partial summary judgment on each of Plaintiff's claims to the extent that those claims are based upon alleged infringement of Plaintiff's "512" Word Mark.

Dated:  October 3, 2022                     RUSS, AUGUST & KABAT

By _Ashley R. Yeargan_____
   Irene Y. Lee
   Ashley R. Yeargan
   Erica S. Kim
   Attorneys for Defendant K & SODA,
   LLC d/b/a 818 SPIRITS